IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARL E. SELF and DAMEN OLDS,

                Plaintiffs,

    v.

WILLIAM OLSON, KELSEY BATES,
EDWARD KOLBA, BRENDAN INGENTHRON,
and BRANDA MULLER,[1]

                Defendants.

OPINION AND ORDER

23-cv-374-wmc

---

    Plaintiffs Carl Self and Damen Olds, who are representing themselves, are proceeding on Eighth Amendment conditions of confinement claims arising out of the correctional staff at New Lisbon Correctional Institution allegedly disregarding their exposure to a clogged, flooded toilet between March 23 and 29, 2023. Currently pending before the court is defendants' motion for summary judgment on the merits of plaintiffs' claims, or alternatively, on the grounds of qualified immunity. (Dkt. #35.) Defendants' motion will be granted in part and denied in part.

    For the reasons discussed below, the court concludes that no reasonable jury could find that defendants William Olson, Brendan Ingenthron, and Branda Muller unreasonably responded to plaintiffs' conditions of confinement under the Eighth Amendment's high standard for such claims, even drawing all reasonable inferences and viewing the evidence in a light most favorable to plaintiffs. However, for the reasons also discussed below, the court concludes that disputed issues of fact preclude the entry of summary judgment either on the merits or qualified immunity grounds in favor of defendants Kelsey Bates and Edward Kolba

---

[1] The court has revised the caption to add defendants' first names and correct the spelling of their surnames.

at this time. Accordingly, defendants Olson, Ingenthron and Muller's motion for summary judgment will be granted, while this case will proceed to trial on plaintiffs' claims against defendants Bates and Kolba.

## UNDISPUTED FACTS[2]

### A. Background

At all times relevant to this lawsuit, plaintiffs Carl Self and Damen Olds were housed at the New Lisbon Correctional Institution, where defendants all worked. Brendan Ingenthron was the Corrections Program Supervisor or Unit Manager; William Olson was a Correctional Sergeant; Edward Kolba was a Correctional Officer; Kelsey Bates was a Sergeant; and Branda Muller served as an Inmate Complaint Examiner. Further, the parties do not dispute that Olson was on duty in the C-Unit until 2:00 p.m. on March 23, 2023; Bates worked on the C-Unit on March 23 and again on March 27, 28, and 31, 2023; and Kolba worked at the institution on March 25-26 and 29, 2023. (*See* dkt. #41-1.)

On March 23, 2023, plaintiffs were housed together in Cell 64 on the C-Unit, which has no community bathrooms. Plaintiffs aver that the toilet in their cell became clogged on March 23, and even though they asked every correctional officer they saw to help, their toilet remained clogged for six straight days between March 23 and 29, 2023. However, maintenance records show that staff did not place a work order for plaintiffs' toilet in either March or April 2023.

---

[2] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings, as well as the underlying evidentiary record where appropriate, and viewed them and all reasonable inferences in a light most favorable to plaintiffs. *See Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir. 2014) (At summary judgment, the court must "construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").

When an inmate's toilet is clogged and cannot be unclogged using a plunger, it can still be unclogged by releasing what is known as "the trap." Plaintiffs aver that they did everything to try to get staff to release the trap for their cell, but this did not occur until March 29, 2023, when Officer Uniske (not a defendant) responded to Self's requests for help with the clogged toilet.

However, defendant Ingenthron, who is responsible for all activities on the unit, avers that: the trap is supposed to be released by a plumber; and even though some choose to do so, releasing a trap to unclog a toilet is not part of the job description for security staff, nor are they expected to perform this task. Specifically, the parties dispute what options were available to plaintiffs while their toilet was clogged. Again, according to Unit Manager Ingenthron, an inmate without a working toilet can be: (1) moved to another cell, if one is available; (2) approved to use the toilet in another cell; or (3) escorted to another unit to use the bathroom. In contrast, plaintiffs aver that defendant Kolba and another non-defendant, correctional officer told Self that he would receive a conduct report if he tried to enter another cell to use the bathroom, so plaintiffs were forced to sneak into other cells to relieve themselves. Defendants also appear to concede that it is possible that plaintiffs could receive a conduct report and risk segregation if they were caught entering another inmate's cell.

Nonetheless, defendants aver that plaintiffs were free to leave their cell during dayroom hours[3] and had access to a bathroom in the recreation area, as well as in the K Building where the health services unit ("HSU"), education facility, library, intake, and property office are located. While plaintiffs admit that they were able to use the bathroom in recreation *once* each day, they represent in response to defendants' proposed findings that: an inmate cannot just

---

[3] Dayroom hours are 7:45 a.m. to 11:00 a.m.; 12:40 p.m. to 4:30 p.m.; 6:10 p.m. to 9:00 p.m.; and 9:30 p.m. to 11:00 p.m. on weekdays *or* to 12:00 a.m. on holidays and weekends.

3

go to HSU and ask to use the bathroom; and plaintiffs did not ask Sergeant Olson for permission to use a bathroom in the K Building because he "is known to retaliate." (Dkt. #45, at ¶¶ 61 and 63.)

### B. Timing of Defendants' Alleged Knowledge of Clogged Toilet

#### 1. Defendants Olson and Bates (March 23, 2023)

The parties dispute whether plaintiffs told *any* of the defendants about their clogged toilet on the morning of March 23, 2023. Plaintiff Olds avers that he went to the officers' station on the morning of March 23, at which time he informed defendant Olson that his toilet was clogged, and Olson responded by giving him a plunger while promising to put in a work order, which he did not do. Plaintiffs further aver that when the plunger did not resolve the problem, they both returned to the officers' station, where defendant Olson informed Olds that there was no other plunger, and defendant Bates told plaintiff Self that she would follow up with a work order, which she also did not do. In addition, Olds avers that he returned to the officers' station again later that evening to complain to an unidentified staff member about the clogged toilet and was given a different plunger, which also did not work. For their part, Olson and Bates[4] deny being made aware of any issues with plaintiffs' toilet on March 23, 2023.

#### 2. Defendant Kolba (March 25, 2023)

On March 25, 2023, Correctional Officer Kolba and another officer were in the officers' station in C-Unit when plaintiff Self again asked for a plunger.[5] While Kolba gave Self a

---

[4] The parties also dispute whether Sergeant Bates unsuccessfully attempted to unclog plaintiffs' toilet by cleaning the trap on a later date, March 31, 2024, although she wrote a work order at that time. However, that later incident is *not* the subject of the claims at issue in this case, which relates solely to the allegedly consistently clogged toilet between March 23 and 29, 2023.

[5] Plaintiffs initially thought this other officer was Sergeant Bates, but Self now admits confusing this officer with Bates, who did not work at the institution on March 25, 2023.

4

plunger, it did not work once again. Moreover, when Self brought it back, Kolba also told Self that there were no other plungers *and* there was nothing more he could do if a work order had already been placed. Here, too, the parties dispute whether any further communications took place between Self and Kolba. Self says that Kolba and an unidentified officer laughed about the plunger not working, since it was for sinks. Still, Self also says that he informed both officers that his toilet had been clogged and full of feces since March 23, 2023. However, Kolba avers that he was not aware of any urgent situation involving plaintiffs' toilet, had contacted other housing units to locate a different plunger, but was unable to find one. Kolba also says that he notified a "sergeant" of the issue prior to his shift change.[6]

### 3. Defendants Ingenthron and Muller

While in the C-Unit yard on or around March 27, 2023, Self also asked his unit supervisor, defendant Ingenthron, if he could discuss an issue with him, but Ingenthron waived him off and walked away. Self and Olds then submitted separate inmate complaints about staff ignoring their clogged toilet since March 23. While plaintiffs' inmate complaint forms were dated March 28, 2023, and stamped as received on March 30, 2023, plaintiffs assert that video footage recently identified by defendants will show that Inmate Complaint Examiner Muller received the complaints directly from plaintiffs on the C-Unit on the morning of March 28, 2023.[7]

---

[6] There is no evidence identifying who this sergeant may have been.

[7] On December 9, 2024, plaintiffs informed the court that they had not yet received access to this footage (dkt. #54), so the court ordered briefing on the matter, then requested that additional information be provided to facilitate the court's ruling on this discovery dispute by March 13, 2025 (dkt. ##60 and 68). That motion is still under consideration by Magistrate Judge Boor.

5

Emails submitted by defendants show that ICE Muller contacted Ingenthron about the complaints on March 30, asking for a status report and whether maintenance had received a work order. As a result, the parties dispute when Ingenthron first learned about plaintiffs' clogged toilet. Ingenthron avers that Muller's email was the first he heard of plaintiffs having a clogged toilet, while Self has submitted a copy of an information request to Ingenthron that he dated March 28, 2023, although that document is not stamped "received" or otherwise acknowledged by prison staff, much less by Ingenthron. (*See* dkt. #44-17.) Further, Ingenthron avers that he saves all information requests from inmates and did not receive one from Self or Olds between March 23 and April 1, 2023. Finally, after confirming with staff that the toilet issue had been resolved, Ingenthron avers that he called one of the plaintiffs into his office to confirm that the toilet issue was resolved, then informed ICE Muller on March 29 that the toilet had been fixed.

After Muller received Ingenthron's response, she provided Self and Olds with an ICE Return Letter stating that she was rejecting the complaints because they had not first attempted to resolve the issue by filing an information request with Unit Manager Ingenthron or the Building and Grounds Superintendent. While there is no policy *requiring* plaintiffs to contact either the unit manager or maintenance about a clogged toilet, Self followed Muller's directions and sent Ingenthron an information request on April 8, 2023, who replied that Ingenthron told him there was no need to bother maintenance and no further action was needed because the issue had been resolved. Similarly, Olds submitted an information request about the toilet to Ingenthron on April 2, 2023, who responded the next day that the issue had been resolved on March 29, 2023.

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In deciding whether to grant summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

Generally, a court also construes the filings of unrepresented parties like plaintiffs generously. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (noting that courts "construe *pro se* filings liberally"). However, the Seventh Circuit has repeatedly referred to summary judgment as the "put up or shut up" moment for parties seeking to take their claims to trial, even for *pro se* litigants. *Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted). Specifically, plaintiffs must "do more than simply show that there is some metaphysical doubt as to the material facts"; they must respond to defendants' showing of a lack of material disputes of fact by designating specific facts in affidavits, depositions, answers to interrogatories or admissions that establish a genuine, triable issue. *Anderson*, 477 U.S. at 256-57, 261. And because those facts must be admissible at trial, plaintiffs may not rely on inadmissible hearsay, speculation, or conclusory allegations to defeat summary judgment. *See Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023); *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999). Finally, a factual dispute can preclude summary judgment only if the facts "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Here, plaintiffs contend that defendants forced them to live in a cell with a clogged, flooding toilet containing human waste for six days. The Eighth Amendment guarantees prisoners humane conditions of confinement for their health and safety. *Rice ex rel. Rice v. Corr. Med. Serv's*, 675 F.3d 650, 664 (7th Cir. 2012). For example, prisoners must receive adequate food, clothing, and shelter. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A claim that a prisoner's conditions of confinement violate the Eighth Amendment requires the prisoner to prove two things: (1) the adverse condition is sufficiently serious to result in "the denial of the minimal civilized measure of life's necessities"; and (2) prison officials have consciously disregarded that condition. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834); *Rice*, 675 F.3d at 664-65. However, a plaintiff "must do more than demonstrate a triable issue of fact with respect to the conditions he faces; he must also show that he suffered some cognizable harm from the overall lack of a sanitary environment, and that the [prison officials'] deliberate indifference caused that harm." *Gray*, 826 F.3d at 1006.

Even if prison officials violate the Constitution, they are entitled to qualified immunity absent proof of a violation of clearly established law. *Tousis v. Billiot*, 84 F.4th 692, 698 (7th Cir. 2023). In other words, if the law was not so clear at the time of the alleged violation that every reasonable official would understand that their conduct was unconstitutional, the official is qualifiably immune. *Id*. Generally, plaintiffs can prove a violation of clearly established law in one of three ways: (1) point to a closely analogous, binding case that established a right to be free from the type of action the defendants performed; (2) identify a clear trend in the case law showing that the recognition of the right by controlling precedent is merely a question of time; or (3) show that the defendants' conduct was "so egregious and unreasonable that no reasonable official could have thought he was acting lawfully." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620-21 (7th Cir. 2022) (citations omitted). Even then, the Seventh Circuit has

8

recognized that the grant of qualified immunity at summary judgment may be premature in cases where material facts are best understood and decided in the context of a full trial of the evidence. *E.g., Davis v. Allen*, 112 F.4th 487, 494 (7th Cir. 2024) ("It is not until those facts [relevant to an excessive force claim] are resolved by a jury are we are able to address the merits of the qualified immunity question."); *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) ("If there are genuine issues of fact concerning th[e] elements [of an Eighth Amendment deliberate indifference claim], a defendant may not avoid trial on the grounds of qualified immunity.").

Based on the undisputed facts, defendants seek summary judgment on four grounds: (1) the conditions of plaintiffs' confinement were not severe enough to pose a substantial risk to their health and safety; (2) plaintiffs did not suffer injury because of their conditions of confinement; (3) defendants were not aware that the clogged toilet in plaintiffs' cell posed any danger to them; and (4) defendants are entitled to qualified immunity. Addressing these arguments below, the court is not persuaded by defendants' first and second arguments related to a lack of severity and injury, and finds that the material facts related to the knowledge of defendants Bates and Kolba are disputed, precluding the entry of summary judgment in favor of these defendants. However, the court concludes that defendants Olson, Ingenthron, and Muller are entitled to summary judgment because no reasonable jury could find that they acted with deliberate indifference to plaintiffs' ongoing conditions of confinement, even drawing all reasonable inferences and viewing the evidence -- including the alleged video footage -- in a light most favorable to plaintiffs.

### A. Severity of Conditions

For an adverse condition to be sufficiently serious, it must be "extreme," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and it must deprive the prisoner of a "minimal civilized

measure of life's necessities," *Farmer*, 511 U.S. at 834. Plaintiffs contend that they were forced to live in unsanitary conditions from urine and feces in their cell. While defendants are correct that "[a] single clogged toilet does not violate the Constitution," *Hardeman*, 933 F.3d at 821, it is undisputed that plaintiffs in this case had to sleep, brush their teeth, and otherwise live next to a non-working toilet filled with urine and feces for *six* days. Moreover, "courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste." *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990); *see also DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (exposure to human waste, even for 36 hours, could constitute sufficiently serious deprivation in violation of Eighth Amendment); *McCord v. Ruiz*, No. 18-c-1311, 2020 WL 5877684, at *4 (E.D. Wis. Oct. 2, 2020) ("Concerning the toilet, long-term or extreme exposure to human waste, especially when compounded with other conditions, clearly is a deprivation contemplated under this standard.") (collecting cases); *Hollins v. Waller*, No. 17-CV-757-JDP, 2019 WL 5864897, at *3 (W.D. Wis. Nov. 8, 2019) (finding similar conditions serious enough to meet severity element on summary judgment). Finally, plaintiffs further contend that they did not have regular or easy access to another toilet during that time. If true, this would exacerbate the severity of their conditions and may allow a reasonable trier of fact to infer that plaintiffs faced a significant risk of harm to their health and safety.

### B. Cognizable Injury

Although plaintiffs have not proposed any specific, factual findings regarding any physical injury suffered from their conditions of confinement, they both have submitted declarations averring that: (1) they "at times" had "really bad cramping pains for holding his feces for so long" and at other times "would get constipated," making it more painful to go to

the bathroom; (2) when they brushed their teeth in the cell, they would gag and dry heave from the stench; and (3) when they urinated in their toilet, small droplets of sewage would get on the floor and their clothing, putting them "at risk of bodily harm." (Dkt. ##46 and 48, at ¶¶ 15-16.)

Defendants seek summary judgment based on the fact that plaintiffs sustained only these "minor" discomforts from the conditions of their confinement. In support of this argument, they cite *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020), in which the Seventh Circuit held that "an insincere threat of suicide to get attention," coupled with a superficial physical injury, is not sufficient to demonstrate a cognizable harm, and affirmed the grant of summary judgment in the defendants' favor. However, as this court has held, "the *Lord* opinion proves an ill-fit" for claims arising out of intolerable conditions of confinement, which "encompass a combination of conditions creating 'a risk of particular discomfort and humiliation.'" *Artis v. Price*, No. 19-cv-303-wmc, 2021 WL 4086208, at *7 (W.D. Wis. Sept. 8, 2021) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). In particular, courts have found that "[e]xposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer*, and the more general standards of dignity embodied in the Eighth Amendment." *DeSpain*, 264 F.3d at 974; *see also LaReau v. MacDougall*, 473 F.2d 974, 978 (2nd Cir. 1972) ("Causing a man to live, eat, and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."); *Hardeman*, 933 F.3d at 821 (citing *DeSpain* with approval); *Karow v. Est. of Heyde*, No. 14-cv-395-jdp, 2017 WL 1194740, at *9 (W.D. Wis. Mar. 30, 2017) (explaining that conditions-of-confinement deprivations include "exposing the inmate to substantial risks of bodily harm without justification, inflicting unnecessary pain, causing unnecessary humiliation, or offending contemporary standards of human decency"). Accordingly, the court also rejects defendants'

11

argument that plaintiffs' claim fails as a matter of law for lack of sufficient evidence of physical injuries or impaired health.[8]

## C. Defendants' Conscious Disregard

To survive summary judgment, plaintiffs must also show that each of the defendants acted with deliberate indifference to the conditions they faced. *Gray*, 826 F.3d at 1006. Here, the extent and timing of defendants' knowledge is largely in dispute. Considering the evidence in a light most favorable to plaintiffs, as the court must do at this stage, plaintiffs informed defendants Bates and Kolba of an *ongoing* problem with their toilet *and* their exposure to human waste at least by March 25, 2023; yet these same defendants took no action to resolve the issue, even after plaintiffs informed them that the plungers would not unclog the toilet. *See Hollins*, 2019 WL 5864897, at *3 (finding disputed issues of material fact as to conscious disregard where plaintiff said defendants knew the provided supplies did not work to clean urine and feces from cell). While plaintiffs do not assert that they had further interactions with these particular defendants after March 25, 2023, they aver telling other staff working on the unit that their toilet remained clogged. Defendants are correct that they cannot be blamed for the actions (or lack thereof) of other, unidentified staff members, but a reasonable jury may infer that any correctional officer working in the vicinity necessarily would have known about the ongoing condition of plaintiffs' cell. *See Vinning-El v. Long*, 482 F.3d 923, 925 (7th Cir. 2007) (citing *Hall v. Bennett*, 379 F.3d 462, 464 (7th Cir. 2004), for holding that deliberate indifference can be inferred from circumstantial evidence, including evidence that the risk was so obvious as to impart actual knowledge on part of defendants).

---

[8] Of course, a jury might find a lack of evidence of compensable, physical injuries or impaired health, foreclosing an award of compensatory damages beyond $1.00, though punitive damages may remain a remedy.

12

Therefore, given that there is no evidence establishing whether Olson worked on plaintiffs' unit after March 23, 2023, a reasonable jury would have no basis to impute knowledge of an ongoing, unfixed problem with plaintiffs' cell toilet for more than one day. Thus, plaintiffs evidence fails to support inferring that knowledge to Sergeant Olson. In contrast, it is undisputed that Bates and Kolba again worked on the unit at some point between March 25 and March 29, 2023. In light of the above circumstances and factual disputes, a reasonable jury may infer that defendants Bates and Kolba were aware of the growing, unresolved problem with plaintiffs' cell. Thus, the court must deny summary judgment as to both, including on qualified immunity grounds. *See Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) (recognizing clearly established right of inmates "not to be forced to live surrounded by their own and others' excrement").

Finally, construing the evidence of record in plaintiffs' favor and considering the totality of the circumstances, no reasonable jury could find that defendants Ingenthron and Muller had sufficient time to take any action to help plaintiffs before the toilet was unclogged on March 29, 2023. In particular, plaintiffs themselves aver that on March 28, 2023, they personally handed Muller their complaint forms (a fact they maintain will be corroborated by video footage yet to be released by defendants) and submitted an information and request form to Ingenthron. As an initial matter, the evidence regarding Unit Manager Ingenthron's receipt of the information request is questionable, and it is unclear whether video footage of ICE Muller in the dayroom on plaintiff's housing unit will be helpful in establishing her receipt of plaintiffs' complaint forms on March 28, 2003, as plaintiffs claim. Even considering plaintiffs' account of these events to be true, however, a reasonable jury could not find that Ingenthron and Muller consciously disregarded plaintiffs' conditions of confinement on March 28, 2023, given that plaintiffs' toilet was unclogged the very next day. Instead, the undisputed evidence shows that

13

neither Ingenthron nor Muller ever refused to address plaintiffs' clogged toilet, and that both took action on March 30, 2023, to make sure plaintiffs were no longer living with these conditions.

While plaintiffs argue that Ingenthron and Muller should have taken *quicker* action to resolve the clogged toilet, these defendants caused no more than a 24-hour delay in plaintiffs receiving relief from the unsanitary conditions. Under these circumstances, a reasonable jury could not conclude that defendants' failure to act immediately upon their alleged receipt of plaintiffs' complaint on March 28, 2023, rose to the level of deliberate indifference, as they would have needed some time to investigate and help put things right. Accordingly, defendants Ingenthron and Muller are also entitled to summary judgment on plaintiffs' claim against them.

## ORDER

IT IS ORDERED that defendants' motion for summary judgment (dkt. #35) is GRANTED IN PART and DENIED IN PART, as follows:

1) Plaintiffs' claims against defendants Olson, Ingenthron, and Muller are DISMISSED WITH PREJUDICE.

2) Defendants' motion is DENIED in all other respects, and this case will proceed to trial on plaintiffs' claims against defendants Bates and Kolba.

Entered this 14th day of March, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge